400 N.E.2d 1134 (1980)
Ruth B. HAZELETT, Appellant (Plaintiff below),
v.
BLUE CROSS AND BLUE SHIELD OF INDIANA, Mutual Hospital Insurance, Inc., and Mutual Medical Insurance, Inc., Appellee (Defendant below).
No. 2-278A38.
Court of Appeals of Indiana, Second District.
February 21, 1980.
Allen C. Mattson, Ford & Mattson, Hartford City, for appellant.
Donald C. Trigg, Indianapolis, for appellee.
BUCHANAN, Chief Judge.

CASE SUMMARY
Ruth B. Hazelett (Hazelett) appeals the dismissal of her suit against Blue Cross and Blue Shield of Indiana, et al (Blue Cross), claiming she was not required to exhaust any administrative remedies prior to bringing her action.
We reverse.

*1135 FACTS
The facts are not in dispute:
Hazelett had health insurance coverage under Blue Cross and Blue Shield personal protection plan certificates of membership, which had previously been approved by the Indiana Insurance Commissioner (Commissioner). Under Article I(O) of the certificates, major medical benefits were payable only after payment from other insurance coverage had been deducted. Clearly stamped on the outside of the major medical certificate of membership was the following notice:
NOTICE
MAJOR MEDICAL BENEFITS will be paid only after other insurance payments covering this loss are first deducted as by POLICY PROVISIONS. See Article I, Paragraph "N" and "O".
Hazelett obtained "other coverage" through the Colonial Penn Franklin Insurance Company (Colonial Penn).
Hazelett made claim for $6,070.40 to Blue Cross for surgical and hospitalization charges incurred from June 6 through June 30, 1976. Blue Cross paid $4,614.44 to the hospital. The outstanding balance of $1,456.00[1] was submitted to Blue Cross under Hazelett's major medical policy. Because she received a check from Colonial Penn for $210.00, Blue Cross deducted the Colonial Penn payment, and tendered 80% of the remaining balance  $996.80.[2]
Hazelett filed suit in the Grant Circuit Court alleging that the "other insurance" provision in the Blue Cross policy violated public policy. Hazelett sought $168.00 in actual damages and one million dollars in punitive damages. She also sought certification to proceed with the suit as a class action.
On Blue Cross' motion, the trial court dismissed the suit on the grounds that Hazelett had failed to exhaust her administrative remedies by challenging the disputed provision before the Indiana Insurance Commissioner.
Hazelett appeals.

ISSUE
Hazelett raises but a single issue on appeal:
Did the trial court properly dismiss the suit because of failure to exhaust administrative remedies?
PARTIES' CONTENTIONS  Hazelett contends that she need not exhaust her administrative remedies because they are inadequate. As she was seeking actual damages, punitive damages, and attorneys' fees via a class action suit, items which the Commissioner did not have the power to award, she claims that resort to the administrative agency would have been a meaningless step.
Blue Cross replies that before challenging an insurance policy provision in the courts as being against public policy, Hazelett was required to exhaust any administrative remedies available to her, and that Ind. Code 27-8-5-1 required her to first challenge the provision before the Insurance Commissioner.

DECISION
CONCLUSION  The trial court improperly dismissed Hazelett's action as there was no administrative remedy for Hazelett to exhaust.
Of necessity, the requirement of exhaustion of administrative remedies is contingent upon the existence of a remedy.
Blue Cross sees an administrative remedy for Hazelett in Ind. Code 27-8-5-1 (the Statute):
No policy of accident and sickness insurance shall be issued or delivered to any person in this state nor shall any application, rider or endorsement be used in connection therewith until a copy of the *1136 form thereof and of the classification of risks and the premium rates, or, in the case of assessment companies the estimated cost pertaining thereto, have been filed with the commissioner. This section shall be applicable also to assessment companies and fraternal benefit associations or societies.
No such policy shall be issued, nor shall any application, rider, or endorsement be used in connection therewith, until the expiration of thirty (30) days after it has been so filed unless the commissioner shall sooner give his written approval thereto.
The commissioner may within thirty (30) days after the filing of any such form, disapprove such form (1) if in the case of an individual accident and sickness form the benefits provided therein are unreasonable in relation to the premium charged, or (2) if in the case of an individual, blanket, or group accident and sickness form it contains a provision or provisions which are unjust, unfair, inequitable, misleading, deceptive or encourage misrepresentation of such policy. If the commissioner shall notify the insurer which has filed any such form that it does not comply with the provisions of this section, it shall be unlawful thereafter for such insurer to issue such form or use it in connection with any policy. In such notice the commissioner shall specify the reasons for his disapproval and state that a hearing will be granted within twenty (20) days after request in writing by the insurer.

The commissioner may at any time, after a hearing of which not less than twenty (20) days' written notice shall have been given to the insurer, withdraw his approval of any such form on any of the grounds stated in this section. It shall be unlawful for the insurer to issue such form or use it in connection with any policy after the effective date of such withdrawal of approval. The notice of any hearing called under this paragraph shall specify the matters to be considered at such hearing and any decision affirming disapproval or directing withdrawal of approval under this section shall be in writing and shall specify the reasons therefor. (emphasis supplied)
Specifically, Blue Cross maintains that a health insurance policy provision must first be challenged before the Insurance Commissioner before it can be challenged in court as being against public policy. This is not the purpose of this statute, and no Indiana case, nor any case we have found in any other jurisdiction, has required an exhaustion of administrative remedies before challenging an insurance policy provision in court. See, e.g., Pinkus v. Southern Farm Bureau Casualty Ins. Co. (E.D.Ark. 1968), 292 F. Supp. 141; M.F.A. Mutual Ins. Co. v. McKinley (1968), 245 Ark. 326, 432 S.W.2d 484; Furguson v. Phoenix Assurance Co. of New York (1962), 189 Kan. 459, 370 P.2d 379; Miles v. State Farm Automobile Ins. Co. (Mo. App. 1975), 519 S.W.2d 378.
Blue Cross leans heavily on Insurance Commissioners of Indiana v. Mutual Medical Insurance, Inc. (1968), 251 Ind. 296, 241 N.E.2d 56 to support its view that there was an administrative remedy available to Hazelett. In that case, the Indiana Podiatrists' Association, Inc. filed a complaint with the Insurance Commissioner charging that policy provisions which excluded coverage for services of podiatrists violated public policy. Our Supreme Court held that the Podiatrists' Association did not have legal standing and therefore could not be a party either to the administrative proceedings or to the judicial review of those proceedings. However, the court went on to state that the standing of the Podiatrists' Association was not required to put the issue of the policy provision before the Commissioner.
The personal merit, standing or legal interests and motives of a private complainant under these statutory provisions, are immaterial to the jurisdiction of the Insurance Commissioner, if the practice complained of is one in which the public generally has an interest. As a consequence, where a complaint is found to be of public interest generally, the nature of the interest of the complainant is insignificant and the hearing on the issues *1137 may stand as if brought by the Commissioner on his own motion.
While the administrative agency has jurisdiction to conduct a hearing on the practices complained of, it does not follow that the complainant becomes a party to the action.
251 Ind. at 300, 241 N.E.2d at 59. This case merely demonstrates that even an individual or organization without proper legal standing may bring the issue of whether an insurance policy provision violates public policy to the attention of the Commissioner. But neither that case, nor the language of the statute contemplates a mandatory proceeding through which all challenges to insurance policy provisions must be routed. All of which is in keeping with Indiana cases involving the uninsured motorist statute, which have not required exhaustion before the Commissioner. See Vantine v. Aetna Casualty & Surety Company (N.D. Ind. 1971), 335 F. Supp. 1296; Simpson v. State Farm Mutual Automobile Insurance Company (S.D.Ind. 1970), 318 F. Supp. 1152; Liddy v. Companion Insurance Company (1979), Ind. App., 390 N.E.2d 1022; Patton v. Safeco Insurance Company of America (1971), 148 Ind. App. 548, 267 N.E.2d 859.
Back to the Statute which Blue Cross sees, somewhat myopically we conclude, as the source of an administrative remedy for Hazelett. The basic rules of statutory construction require that it be construed as a whole, In re Big Raccoon Conservancy Dist. v. Kessler Farms Corp. (1977), Ind. App., 363 N.E.2d 1004, giving words their plain, ordinary and usual meaning. State v. Turner (1979), Ind. App., 386 N.E.2d 208; State v. Bress (1976), Ind. App., 349 N.E.2d 229. On its face all it does is establish a procedure by which insurance policies and provisions must be approved by the Commissioner before they can be lawfully issued by an insurance company. Without this approval, which may be withdrawn at any time, it is unlawful for an insurance company to issue a policy or provision. To do so would result in statutory penalties.[3] What is controlled is the action of insurance companies in issuing policies and the Commissioner's approval does not directly bear on the relationship between the insurance company and the policyholder.
There is no hint of establishing any type of administrative remedy for policyholders. In fact they are not mentioned. The Statute is limited to providing the manner in which insurance companies could gain the necessary approval to lawfully issue insurance policies ... nothing more.
Thus, it would be an aberration to construe the Statute as requiring Hazelett to pursue a non-existent administrative remedy.
While we express no opinion as to the merits of Hazelett's claim, we do find that she cannot be denied her day in court because of her failure to exhaust what does not exist.
The judgment of the trial court is reversed and this cause remanded for further proceedings not inconsistent herewith.
SULLIVAN and SHIELDS, JJ., concur.
NOTES
[1] Although the mathematical computation is not entirely correct, the parties have provided us no other figures with which to compute the proper amount.
[2] 80% of $1,245.00.
[3] Ind. Code (1976) XX-X-XX-X (repealed by Acts 1978, P.L. 2, § 2728); replaced by Ind. Code (1979 Supp.) 27-1-2-4.