**GOLDEN RULE INSURANCE COMPANY, An Illinois Corporation, Appellant–Plaintiff,**

**v.**

**Sally McCARTY, Commissioner of Insurance, Indiana Department of Insurance, State of Indiana, Appellees–Defendants.**

No. 49A02–0010–CV–672.

Court of Appeals of Indiana.

Sept. 17, 2001.

Edgar R. Lantis, Abel & Lantis, Carmel, Indiana, Attorney for Appellant.

Steven K. Huffer, Huffer & Weathers, PC, Indianapolis, Indiana, Attorney for amicus curiae, Freedom Life Insurance Company of America.

Steve Carter, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATHIAS, Judge

Golden Rule Insurance Company ("Golden Rule") appeals the trial court's award of declaratory relief to Sally McCarty, Indiana's Commissioner of Insurance ("the Commissioner"). Golden Rule raises two issues, which we restate as:

I. Whether Indiana Code section 27–8–5–19(c) precludes the use of long-term or indefinite exclusionary riders in conjunction with association-based group accident and sickness insurance offered to Indiana residents; and

II. Whether Indiana Code section 27–8–5–1 requires the prior approval of the Commissioner of Insurance before an insurer may implement revised renewal rates for its individual accident and sickness policy forms.

We affirm.

## Facts and Procedural History

Golden Rule is an Illinois corporation with its executive offices in Indianapolis. It is licensed to and in fact does issue certificates of accident and sickness insurance to Indiana residents pursuant to a group policy issued and delivered in Illinois.

On March 5, 1999, the Commissioner, through her agent, notified Golden Rule that its use of indefinite exclusionary riders for its group health and accident policies violated Indiana Code section 27–8–5–19(c)(5). On August 9, 1999, the Commissioner issued Bulletin 96, entitled "Long Term, Indefinite or Permanent Waivers of Coverage Impermissible," explaining:

Ind.Code § 27–8–5–19(c)(5) provides, in general that exclusions or limitations of coverage for preexisting conditions may apply only to a disease or condition for which treatment was received during the six (6) months before coverage begins, and may not apply to a loss or disability incurred more than twelve (12) months after coverage begins (eighteen (18) months for a late enrollee). Other exclusions or limitations in the policy may apply only to services specifically exclud-

ed from the policy's benefits for all certificate holders.

R. at 20.

On or about August 15, 1999, Golden Rule issued a certificate of insurance, pursuant to a group policy issued and delivered to the Federation of American Consumers and Travelers, to Jeffrey Woodall, an Indiana resident. The certificate was subject to three exclusionary riders, two of those for an indefinite duration and the third for a two-year duration. When Golden Rule refused to provide Woodall with benefits for a condition excluded by the rider, he filed a complaint with the Commissioner.

In addition to Golden Rule's exclusionary practices under the *group* policies described above, Golden Rule also issued *individual* accident and sickness insurance policies to Indiana residents prior to 1991. Before issuing the policies, Golden Rule filed the policies and initial premium rates with, and procured the approval of, the Commissioner as required by Indiana Code section 27–8–5–1. Subsequent to the initial approval, however, Golden Rule revised its premiums on a "file and use," rather than a "file and approve" basis. A dispute between Golden Rule and the Commissioner arose in 1999, when Golden Rule submitted revised renewal rates and the Commissioner sought additional information to complete her review of the filing and asserted that the proposed new rates could not take effect until approved. Golden Rule asserted that the Commissioner lacked prior approval authority for premiums and stated that it would implement its new premiums without approval on September 1. The Commissioner asserted that Golden Rule's implementation of new rates without prior approval would "violate Indiana law," but the dispute became moot when the Commissioner approved the new premiums before September 1.

On October 6, 1999, Golden Rule filed a Complaint for Declaratory Judgment in Marion County Superior Court, challenging the Commissioner's interpretations of Indiana Code sections 27–8–5–19(c)(5) and 27–8–5–1 and seeking an injunction prohibiting her from enforcing those statutes in the manner threatened. On April 19, 2000, Golden Rule filed a motion for judgment on the pleadings, and the trial court held a hearing on the motion on July 31, 2000. On October 16, 2000, the trial court entered findings and conclusions denying Golden Rule's motion for judgment on the pleadings and entering judgment on the pleadings for the Commissioner as to both issues. Golden Rule appeals.

### Standard of Review

 Indiana Trial Rule 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(C) motion attacks the legal sufficiency of the pleadings. *Richards–Wilcox, Inc. v. Cummins*, 700 N.E.2d 496, 499 (Ind.Ct.App.1998). We review a Rule 12(C) motion de novo, and a motion for judgment on the pleadings will not be granted unless it is clear from the face of the complaint that under no circumstances relief could be granted. *Id.* In reviewing the grant of a Rule 12(C) motion, we accept as true the well-pleaded material facts alleged in the pleadings, and our review is confined to information included in the pleadings. *Bledsoe v. Fleming*, 712 N.E.2d 1067, 1070 (Ind.Ct.App. 1999).

 The interpretation of a statute is a legal question that is reviewed de novo. *Ind. Bell Tel. Co. v. Ind. Util. Regulatory Comm'n*, 715 N.E.2d 351, 354 (Ind.1999). Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Miller Brewing*

*Co. v. Bartholemew County Beverage Co.,* 674 N.E.2d 193, 200 (Ind.Ct.App.1996), *trans. denied.* The first and often the last step in interpreting a statute is to examine the language of the statute. *Ind. Bell,* 715 N.E.2d at 354. When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Poehlman v. Feferman,* 717 N.E.2d 578, 581 (Ind.1999).

### I. Indiana Code Section 27–8–5–19(c)(5)

■ The parties agree, and the trial court found, that the language of Indiana Code section 27–8–5–19(c)(5) is neither vague nor ambiguous. Oddly enough, however, the parties disagree about what the unambiguous language of the statute means. Indiana Code section 27–8–5–19 provides in relevant part:

(b) A policy of group accident and sickness insurance may not be issued to a group that has a legal situs in Indiana unless it contains in substance:

(1) the provisions described in subsection (c)....

(c) The provisions referred to in subsection (b)(1) are as follows:....

(5) A provision specifying any additional exclusions or limitations applicable under the policy with respect to a disease or physical condition of a person that existed before the effective date of the person's coverage under the policy and that is not otherwise excluded from the person's coverage by name or specific description effective on the date of the person's loss. An exclusion or limitation that must be specified in a provision under this subdivision:

(A) may apply only to a disease or physical condition for which medical advice, diagnosis, care, or treatment was received by the person or recommended to the person during the six (6) months before the enrollment date of the person's coverage; and

(B) may not apply to a loss incurred or disability beginning after the earlier of:

(ii) the end of a continuous period of twelve (12) months beginning on or after the enrollment date of the person's coverage; or

(ii) the end of a continuous period of eighteen (18) months beginning on the enrollment date of the person's coverage if the person is a late enrollee.

This subdivision applies only to group policies of accident and sickness insurance other than those described in section 2.5(a)(1) through 2.5(a)(8) of this chapter.

There is nothing unclear or unambiguous about this language. Section 19(b) states that group insurance policies must contain the provisions listed in section 19(c). Section 19(c)(5) then requires that each group policy contain "a provision specifying any additional exclusions or limitations applicable under the policy" for preexisting conditions that are "not otherwise excluded from the person's coverage by name or specific description...." This sentence contains two types of exclusions permitted by the statute: (1) "additional exclusions or limitations applicable under the policy," which are exclusions that apply to everyone covered by the policy and (2) coverage "otherwise excluded from the person's coverage by name or specific description," which are exclusions that apply to specific individual members of the group. The six, twelve, and eighteen-month durational limits explained in the remainder of section 19(c)(5) apply only to the exclusions for individual group members.

Despite this clear language, Golden Rule suggests that it may

> generally exclude, by a standard policy provision, all uninsurable conditions that manifest themselves within six months of the effective date of coverage for a period of twelve months. If the company wants to limit or exclude an uninsurable condition that manifests itself more than six months before the effective date of coverage, or, wants to limit or exclude coverage of an uninsurable condition for more than twelve months, it can and must do so by name or specific description of the condition (i.e., an exclusionary rider) attached to and effective on the date of the covered person's loss.

Appellant's Br. at 10–11. However, the construction advanced by Golden Rule effectively renders the provisions of section 19(c)(5) null and void by failing to give meaning to every word of the statute. This is unacceptable. *See Patel v. Barker*, 742 N.E.2d 28, 31 (Ind.Ct.App.2001), *trans. denied.* ("In construing a statute, the court must consider the whole act and, if possible, effect must be given to every word and clause therein.").

Golden Rule also relies on Indiana Code section 27–8–5–16(5), which allows an insurer to exclude or limit the coverage of any person who fails to provide satisfactory evidence of insurability. However, section 16(5) must also be harmonized with the specific requirements of section 19(c)(5), which provide specific limitations on exclusions that apply to individual group members. The specific statutory provision controls the general one. *See Hendrickson v. Alcoa Fuels, Inc.*, 735 N.E.2d 804, 814 (Ind.Ct.App.2000).

Both parties make policy arguments in support of their respective positions. Golden Rule contends that adopting the Commissioner's view will "not increase availability of insurance for people with uninsurable medical conditions" but will instead "force Golden Rule to decline otherwise insurable applicants in their entirety." Appellant's Br. at 11. The Commissioner posits that "Indiana's legislation embodies a sensible policy permitting those who have preexisting medical conditions to spread the cost of their treatment across the membership of the group for which the policy has been written." Appellee's Br. at 14–15. The soundness of the public policy underlying this statute is a matter of legislative prerogative, as both parties concede. As explained above, our duty is simply to give the language enacted its clear, plain, and obvious meaning.[1]

Accordingly, we affirm the trial court's grant of judgment on the pleadings as to Indiana Code section 27–8–5–19(c)(5).

## II. Indiana Code Section 27–8–5–1

 Golden Rule also challenges the grant of judgment on the pleadings as to the Commissioner's interpretation of Indiana Code section 27–8–5–1. The relevant parts of that statute provide:

---

1. We also reject Golden Rule's suggestion that proposed but unenacted legislation regarding this statute should have some bearing on our interpretation of this clear and unambiguous statute, which has been on the books for years. As the Commissioner points out, legislators introduce bills for many reasons, none of which are disclosed in the record. In any event, the act of a subsequent General Assembly provides little, if any, insight into the motivation of a prior one. A bill could be introduced to clarify, rather than change, a statute.

Finally, although amicus suggests that "retroactive application of Bulletin 96" violates the Contract Clauses of the U.S. and Indiana Constitutions, this claim was not raised in the trial court and therefore may not be raised for the first time on appeal. *Parrish v. Pike Township Trustee's Office of Marion County*, 742 N.E.2d 515, 518 (Ind.Ct.App.2001).

(b) No policy of accident and sickness insurance may be issued or delivered to any person in this state, nor may any application, rider, or endorsement be used in connection with an accident and sickness insurance policy until a copy of the form of the policy and of the classification of risks and the premium rates, or, in the case of assessment companies, the estimated cost pertaining thereto, have been filed with the commissioner. This section is applicable also to assessment companies and fraternal benefit associations or societies.

(c) No policy of accident and sickness insurance may be issued, nor may any application, rider, or endorsement be used in connection with a policy of accident and sickness insurance, until the expiration of thirty (30) days after it has been filed under subsection (b), unless the commissioner gives his written approval to it before the expiration of the thirty (30) day period.

(d) The commissioner may, within thirty (30) days after the filing of any form under subsection (b), disapprove the form:

(1) if, in the case of an individual accident and sickness form, the benefits provided therein are unreasonable in relation to the premium charged; or

(2) if, in the case of an individual, blanket, or group accident and sickness form, it contains a provision or provisions that are unjust, unfair, inequitable, misleading, or deceptive or that encourage misrepresentation of the policy.

(e) If the commissioner notifies the insurer that filed a form that the form does not comply with this section, it is unlawful thereafter for the insurer to issue the form or use it in connection with any policy. In the notice given

under this subsection, the commissioner shall specify the reasons for his disapproval and state that a hearing will be granted within twenty (20) days after request in writing by the insurer.

Ind.Code § 27–8–5–1 (1998). Golden Rule contends that this statute does not grant the Commissioner the authority to "disapprove" any filing (more specifically, a revised renewal rate) made under subsection (b), but rather only gives her the authority to disapprove the initial "policy." We disagree.

Subsection (b) gives the Commissioner approval authority over the "form of the policy and the classification of risks and *the premium rates* ...." (emphasis added). Subsection (c) establishes the thirty-day waiting period during which the Commissioner can review and approve or disapprove a policy. Subsection (d) then sets forth the criteria by which the Commissioner may disapprove a "form" under subsection (b): (1) if the benefits are unreasonable in relation to the premium, or (2) if the form contains a provision that is unjust, unfair, inequitable, misleading, or deceptive. In short, subsection (b) applies specifically to "premium rates" and subsection (d) specifically allows disapproval if benefits are unreasonable in relation to "the premium charged." This clear and unambiguous language grants the Commissioner "file and approve" authority over premiums, not merely entire insurance policies. Had the General Assembly wanted to write a "file and use" statute, as Golden Rule attempts to categorize the one at hand, it could have done so in the clear and unambiguous language set forth in Indiana Code section 27–1–22–4(e), which applies to property and casualty insurance.[2]

Golden Rule points to unenacted Indiana legislation and model regulations and

---

**2.** Golden Rule also points to *Hazelett v. Blue Cross and Blue Shield of Ind.,* 400 N.E.2d

1134 (Ind.Ct.App.1980), in which this Court considered the propriety of a trial court's

guidelines from the National Association of Insurance Commissioners ("NAIC") as support for its position. As discussed above, however, unenacted legislative proposals offer no aid to Golden Rule's claims. *See supra* note 1. Moreover, the NAIC materials, which were not before the trial court as part of the pleadings, are not properly before this court, and even if they were, they are extraneous and irrelevant in light of our conclusion that the language of the Indiana statute is clear and unambiguous.

Accordingly, the trial court properly granted judgment on the pleadings to the Commissioner as to Indiana Code section 27–8–5–1.[3]

### Conclusion

For all of these reasons, the judgment of the trial court is affirmed.

BAILEY, J., and BAKER, J., concur.

---

dismissal of a suit under this statute based on the insured's failure to exhaust administrative remedies. We noted

> On its face all it does is establish a procedure by which insurance policies and provisions must be approved by the Commissioner before they can be lawfully issued by an insurance company. Without this approval, which may be withdrawn at any time, it is unlawful for an insurance company to issue a policy or provision. To do so would result in statutory penalties. What is controlled is the action of insurance companies in issuing policies and the Commissioner's approval does not directly bear on the relationship between the insurance company and the policyholder.

*Id.* at 1137 (footnote omitted).

Seizing on this language, Golden Rule contends that the statute requires that only "insurance policy forms" be approved by the Commissioner and does not require prior approval of "revised renewal rates for previously-approved policies." Appellant's Br. at 18.

The issue in *Hazelett* was one of administrative procedure, not statutory construction. The case held: "There is no hint of establishing any type of administrative remedy for policyholders. In fact they are not mentioned. The Statute is limited to providing the manner in which insurance companies could gain the necessary approval to lawfully issue insurance policies ... nothing more." *Id. Hazelett* did not purport to address the issue presented here and we find it offers no support to Golden Rule on this issue.

3. In its reply brief, Golden Rule suggests that there are genuine issues of material fact concerning the length of time the Commissioner has held and enforced this interpretation of the statute. Reply Brief at 11–12. Although the parties disagree on this issue, the dispute is not a material issue to this case. The clear and unambiguous language of the statute controls our disposition of this issue; the length of time the Commissioner had held or enforced a certain view is not material to that determination.