DAVID A. RYKER PAINTING CO.,
INC., Appellant–Defendant,

v.

George E. NUNAMAKER,
Appellee–Plaintiff.

No. 49A05–0405–CV–252.

Court of Appeals of Indiana.

Dec. 9, 2004.

J. Bradley Schooley, Hostetler & Kowalik, P.C., Indianapolis, IN, Attorney for Appellant.

Stephen C. McNutt, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant David A. Ryker Painting Co., Inc. (Ryker) appeals the trial court's judgment in favor of its employee, appellee-plaintiff George Nunamaker. Specifically, Ryker raises two issues, which we consolidate and restate as one dispositive issue: whether the trial court erred as a matter of law by concluding that Nunamaker was entitled to maintain a claim under Indiana Code section 22–2–5–1, the Wage Payment Statute. Concluding that the Wage Payment Statute has no application in this case, we reverse.

## FACTS

On January 14, 1998, Ryker bid on a sub-contract with Summit Construction Company, Inc. (Summit) for painting work on the Tipton Community School Corporation South Campus (the Project). Ryker's bid was accepted by Summit on March 30, 1998.

Years earlier, Ryker had been a signatory to a collective bargaining agreement and bid on a public works project in which the Common Construction Wage Determination (CCWD) or a Prevailing Wage rate applied. Article I of the contract for the Project incorporated all "Contract Documents" including Addendum No. 1 (Addendum) and the CCWD for the Project. The

CCWD included a classification for "Painter, Brush and Roller" and specified a rate of $16.45 per hour plus $3.60 per hour for fringe benefits for skilled labor. It did not specify a rate for either semi-skilled or unskilled painters.

Ryker did not receive the Addendum or the CCWD from Summit and had prepared its bid based on its customary hourly wage rates. Ryker began work on the Project in November 1998, and Nunamaker worked as a semi-skilled painter on the Project from the week ending on November 11, 1998, through the week ending on December 22, 1999. Ryker paid Nunamaker weekly for his work at its standard rate for semi-skilled workers: $11 per hour plus fringe benefits. At some point during the Project, an employee complained to Ryker that it was required to pay the CCWD wage for the skilled classification to its semi-skilled and unskilled workers and that the CCWD wage rate classification was posted in Summit's trailer on the job site.

After Ryker was made aware of the wage rate issue, David Ryker discussed the CCWD wage rate classification with Summit's project manager, Todd Darley. They agreed that the CCWD did not contain a CCWD wage rate for semi-skilled or unskilled painters. Ryker wrote to Summit on March 2, 1999, proposing wage rates for the semi-skilled and unskilled painters, but Summit did not respond in writing. Ryker requested Summit to ask the Tipton School Corporation Wage Committee (Committee) to convene and amend the original determination to add the missing wage rates for semi-skilled and unskilled painters as proposed in Ryker's letter of March 2, 1999. Based on David Ryker's subsequent conversations with Darley, Ryker understood that its proposal had been accepted by Summit and would satisfy the requirements of the CCWD.

In October 1999, Nunamaker and his father filed a Common Construction Wage Complaint with the Indiana Department of Labor (IDL), alleging that Ryker had failed to pay him the rate required by the CCWD. The IDL conducted an investigation and audit of wages that Ryker paid its employees on the Project. On May 3, 2000, the IDL notified Ryker of its investigation, and Ryker responded on May 17, 2000, transmitting the information requested regarding its employees and wages paid to them for work on the Project. Ryker contended that the CCWD only specified the rate of $16.45 for "skilled" labor and that the wages it had paid to its semi-skilled and unskilled workers were the usual and customary wage rates for painters. As a result of the wage dispute, Nunamaker left his employment with Ryker on July 12, 2000.

On September 8, 2000, IDL notified Ryker of its determination that Ryker owed Nunamaker $3,144.96, and gave payment instructions for the CCWD wage rate for skilled laborers to all of Ryker's workers on the Project regardless of skill classification. Ryker paid Nunamaker by check with the notation, "full & final payment of Tipton school wage audit." Appellant's App. p. 36–37. Nunamaker endorsed the check, inserting, "in protest" above his signature. Id.

On January 10, 2001, Ryker received a letter from Nunamaker asking that it negotiate and/or pay exemplary damages plus attorney fees to Nunamaker pursuant to the Wage Payment Statute. Ryker refused to pay the requested damages, and Nunamaker filed suit on March 8, 2001, alleging that he was due exemplary damages and attorney fees because he was not timely paid for work he performed on the Project. On December 23, 2003, the parties submitted to the trial court a Stipulation of Facts for Trial with exhibits in lieu

of trial. On April 8, 2004, the trial court entered judgment in favor of Nunamaker, finding that the Wage Payment Statute applied, making an award of liquidated damages and attorney fees mandatory. Ryker now appeals.

### DISCUSSION AND DECISION

Resolution of this issue requires us to interpret Indiana Code section 22–2–5–1, et seq. The interpretation of a statute is a legal question that is reviewed de novo. *Golden Rule Ins. Co. v. McCarty,* 755 N.E.2d 1104, 1106 (Ind.Ct.App.2001), *trans. denied.* Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Id.* The first, and often the last, step in interpreting a statute is to examine the language of the statute. *Id.* When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id.*

The Wage Payment Statute requires all employers doing business in Indiana to pay each employee, if requested, at least semi-monthly or biweekly the amount due each employee. Ind.Code § 22–2–5–1. Indiana Code section 22–2–5–2 provides:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in

any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

This provision is punitive in nature, and its purpose is to ensure that employees are promptly and properly paid. *See Valadez v. R.T. Enters., Inc.,* 647 N.E.2d 331, 333 (Ind.Ct.App.1995).

In *Valadez,* Valadez was employed by R.T. Enterprises, Inc. d/b/a Everdry Waterproofing ("Everdry") as a commissioned salesman. Valadez was to receive half his commission three days after securing a signed contract and half when the client paid Everdry. Valadez terminated his employment with Everdry in late 1992, but, by March 1993, Everdry still owed Valadez $3,401 in commissions. After repeatedly demanding payment, Valadez filed suit on March 10 to recover the amount owed. After being sued, Everdry mailed commission checks to Valadez covering all but $308 of the commissions due. The trial court awarded Valadez damages of $3,345.50, representing $1,500 for attorneys' fees, $921.50 for costs, and $924 for failing to pay commissions in a timely manner pursuant to Indiana Code section 22–2–5–2. The $924 represented the $308 unpaid at the time of trial plus double that amount as liquidated damages. *Id.* On appeal, we affirmed the trial court's decision, but remanded with instructions to award Valadez liquidated damages on the late payments in addition to damages for the unpaid wages, costs, and attorneys' fees because the plain language of the statute did not allow for late payments to be discounted when determining liquidated damages. *Id.* at 333.

In *St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele,* 766 N.E.2d 699 (Ind. 2002), St. Vincent and Dr. Steele had a

specific agreement as to when Dr. Steele was to be paid and how much. St. Vincent paid Dr. Steele according to the terms of the agreement for two years. In the third year, St. Vincent began withholding any monies Dr. Steele received from Medicare and Medicaid for the administration of chemotherapy and other medications, relying on a proposed regulation issued by the federal Health Care Financing Administration in January 1998. The trial court entered summary judgment in favor of Dr. Steele, finding that St. Vincent breached the agreement and violated the statute. *Id.* at 700–01. A panel of this court affirmed the decision of the trial court, noting that there is no "good faith" exception to the Wage Payment Statute. *St. Vincent Hosp. and Health Care Ctr. v. Steele,* 742 N.E.2d 1029, 1035 (Ind.Ct.App.2001), *vacated.* Our supreme court granted transfer, vacating the previous opinion. Finding that the Wage Payment Statute governs both the frequency of payment and the amount due, our supreme court likewise affirmed, but expressed no opinion regarding whether there is a "good faith" exception. *St. Vincent,* 766 N.E.2d at 701 n. 2.

The present case is not one in which the employer wrongfully withheld compensation from the employee after repeated demands for payment, like in *Valadez.* Rather, as soon as a wage dispute arose, Nunamaker took his complaint to the IDL, and he received the compensation that the IDL determined he was owed. Moreover, this is not a case in which the employer refused to pay the employee what he was due under a specific agreement, like in *St. Vincent.* To be

sure, there was no CCWD wage rate for semi-skilled or unskilled painters. Appellant's App. p. 20. This was not a failure on the part of Ryker to pay a wage. It was a failure to specify a wage for semi-skilled and unskilled painters, and it was a failure to pay Nunamaker what he thought he was due. However, these failures do not subject Ryker to punitive damages.

As noted above, the purpose of the Wage Payment statute is to punish employers for converting their employees' services by stealing their wages. *Valadez,* 647 N.E.2d at 333. There is no need to punish an employer that genuinely believes that it has done the right thing in the frequency and amount of compensation it gives its employees. A dispute between parties as to an amount that might be owed is not tantamount to a conversion.[1] In our view, the legislature could not have intended that a company be required to pay treble damages every time a good faith dispute as to wages arises. Furthermore, Nunamaker did not incur any attorney fees in the action before the IDL, where he received full compensation. In fact, Nunamaker never would have incurred attorney fees but for filing the present action. In light of the above reasoning, we find that the Wage Payment Statute is inapplicable in this case, and Nunamaker is entitled to neither treble damages nor attorney fees.

The judgment of the trial court is reversed.

KIRSCH, C.J., and ROBB, J., concur.

---

1. Civil conversion has been defined as exerting dominion over another's property to the exclusion and in defiance of the owner's right, under an inconsistent claim of title. *Fillmore LLC v. Fillmore Machine and Tool Co.,* 783 N.E.2d 1169, 1178 (Ind.Ct.App.2003), *trans. denied.* In a good faith dispute, one does not act in defiance of the owner's right, but rather asserts one's own claim of ownership.