[Civ. No. 1116.   Fifth Dist.   Apr. 11, 1969.]

ESTHER ESCAMILLA, Petitioner, v. THE SUPERIOR COURT OF FRESNO COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Krum & Hazel and Eugene W. Krum for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, Edsel W. Haws, Edward A. Hinz, Jr., and Daniel J. Kremer, Deputy Attorneys General, for Real Party in Interest.

STONE, J.—Petitioner seeks to restrain the Superior Court of Fresno County from proceeding with a criminal prosecution against her. An information was filed June 24, 1968, charging her with grand theft in violation of Penal Code section 487. The question here is whether petitioner may claim immunity from prosecution upon said charge by reason of an intervening proceeding under the Unemployment Insurance Code. Petitioner, who refused to answer questions in a proceeding before the appeals board upon the ground the answers

would incriminate her, was ordered to answer by the referee. She now claims immunity under Unemployment Insurance Code section 1955. The pertinent facts are as follows:

Petitioner and her husband, Francisco Escamilla, worked at the Farmers Supply Market in Reedley; she was arrested on May 2 upon suspicion of grand theft from her employer; the next day Francisco was discharged from his employment as a box boy, and he applied for unemployment insurance. When notified of the application, his employer objected, claiming that Francisco had been guilty of misconduct in that he had not been a dependable employee and that in the market owner's belief Francisco knew of his wife's defalcations.

The Department of Employment ruled that Francisco was entitled to unemployment insurance benefits upon the ground that he was not discharged for acts amounting to misconduct. Farmers Supply Market filed a notice of appeal, and on August 16, 1968, a hearing was held before a referee acting on behalf of the Unemployment Insurance Appeals Board. The employer contended that Francisco would have been discharged for acts of misconduct much earlier but it was feared this might impair the criminal investigation of his wife's activities at the market.

Petitioner voluntarily appeared at the hearing, acting as interpreter for her husband. However, she had her own separate counsel, and when she was called to the stand by her husband's attorney and asked questions concerning thefts from her employer, her attorney objected. For example, to the question, "Mrs. Escamilla, did your husband have knowledge of you taking some money from your employer?"; her attorney interposed: "I am going to advise my client not to answer that on the grounds the answer may tend to incriminate her." The referee at first agreed that the witness need not answer, but called a conference when the husband's attorney insisted that the language of Unemployment Insurance Code section 1955, providing that no person shall be excused from testifying on the grounds that it may incriminate him, meant only that "this testimony here could not be used in any other proceeding."

What transpired in the conference is not reported, but the record reflects the following when the hearing resumed:

"REFEREE: While off the record the parties examined Section 1955 of the California Unemployment Insurance Code. Would you proceed Mr. Aycock.

"MR. AYCOCK: Q. Mrs. Escamilla, did you ever tell your

husband, Francisco, that you had or were taking money from your employer?

"MR. KRUM: I will assert the 5th Amendment privilege of—on behalf of my client, Esther Escamilla, on the grounds the answer may tend to incriminate her.

"MR. AYCOCK: I would request Madam Referee that—

"REFEREE: You want a ruling on it?

"MR. AYCOCK: Yes, that she be requested to answer under Section 1955. I believe Mr. Krum would probably agree under the code section as it appears that such testimony would not be admissible against her in a criminal proceeding after she is compelled to testify here and it would, I believe, be of benefit to my client.

"REFEREE: Would you proceed Mrs. Escamilla, answer the question.

"MR. KRUM: You're ordering her to answer the question?

"REFEREE: I'm ordering her to answer the question."

Later, when asked, "Alright, now, what did you do with that money, did you spend any of it on your husband at all," petitioner's attorney said: "I will object or assert the privilege against self-incrimination on behalf of my client and advise her not to answer that question unless ordered to." The referee stated: "You're directed to answer."

■ The effect of the referee's order rests upon an interpretation of section 1955, which provides, in pertinent part: "No individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise."

The facts of this case are strikingly similar to *People* v. *King*, 66 Cal.2d 633 [58 Cal.Rptr. 571, 427 P.2d 171], where the Insurance Commissioner compelled a witness to appear pursuant to Insurance Code section 1020, which makes no provision for a grant of immunity to a witness who gives incriminating testimony. The witness answered all questions put to him, without asserting the privilege against self-incrimination. Later, criminal charges were brought involving matters about which he had testified. In a proceeding under Penal Code section 995 he sought to set aside the indictment upon the ground that having been compelled to testify in hearings before the commissioner, he was entitled to immunity under the provisions of another section of the Insurance Code, namely, section 12924, subdivision (b), which provides: ". . .

no person shall be prosecuted or punished by any criminal action or proceeding for or on account of any act, transaction, matter or thing concerning which he is so compelled to testify under oath. . . .'' The lower court refused to grant the motion to set aside the indictment, but granted a subsequent motion to quash the indictment. The Supreme Court affirmed, holding that the witness was entitled to immunity and, further, that the statute did not require him to assert his privilege against self-incrimination before testifying. (P. 637.)

We deem the case at bench much stronger, in that petitioner did assert her constitutional privilege against self-incrimination and, despite this, was ordered to testify.

At first blush the argument of real party in interest, that where a criminal action is pending in the superior court a hearing officer for a state agency has no authority or power to grant immunity to the accused, seems persuasive. However, the argument overlooks the inherent sovereignty of the state; it may, through the Legislature, delegate to a hearing officer the power to grant immunity to a witness either before or after criminal charges are filed. The Legislature has not limited the power delegated to a hearing officer to grant immunity under Unemployment Insurance Code section 1955 to situations where no criminal proceedings are pending; we cannot read such a limitation into the plain language of the statute. As a practical matter, when a witness charged with a criminal offense claims immunity upon the ground that his testimony may tend to incriminate him, the seriousness of an order requiring him to waive his immunity and testify is patent. Where no charge is pending when the privilege is asserted, it is problematical whether a charge will be made and the privilege become significant; a pending trial removes all doubt.

Moreover, the order of the referee that Mrs. Escamilla testify, despite the assertion of her right not to incriminate herself under the Fifth Amendment to the United States Constitution, gives her claim to immunity under section 1955 constitutional overtones that transcend the jurisdiction of the superior court. The whole purpose of the *Miranda* v. *Arizona* (384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) line of cases is to ensure that an accused knows his rights under the Fifth Amendment so he can assert them if he wishes. Here, petitioner was ordered to testify despite the assertion of her right not to do so.

It is argued that since petitioner voluntarily appeared at the hearing, and not under the compulsion of a subpoena, she is not entitled to the protection of section 1955. In the *King* case the witness not only testified voluntarily, he claimed no immunity before testifying.

Real party in interest also asserts that because the questions upon which petitioner's right to immunity rests were asked by her husband's attorney and followed by her own attorney's claim of privilege, petitioner's claim of immunity is based upon fraud or collusion.

Although the dissent appears to adopt this theory, we cannot reconcile the facts with the fundamental principles of fraud. There can be no doubt that petitioner wanted immunity, but so does every admitted criminal who turns state's evidence. Fraud that would warrant a court in nullifying immunity once it is granted as the basis for a waiver of constitutional rights would, at the very least, require that the authority granting the immunity be misled either by a misstatement of the facts or by a withholding of facts. It is clear from the record that the attorney for petitioner's husband, as well as her own attorney, knew that she hoped for immunity. Knowledge of the pending prosecution of petitioner was well known; as already noted, the referee held a conference to discuss the import of section 1955 after petitioner asserted her constitutional right not to testify. It was clear to everyone present, including the referee, that petitioner intended to claim immunity from the pending prosecution. There was no fraud or concealment; apparently the referee made a mistake of law in her interpretation of the import of section 1955, but that circumstance cannot be equated with fraud.

When the Legislature creates an immunity statute it acts with full knowledge that the statute may protect a wrongdoer from prosecution. With this in mind, the Legislature establishes standards by which the right to immunity is to be measured. It is not within the province of a court to alter the standards so fixed, nor in the court's discretion to grant or deny immunity once those standards are met. To do so would be to substitute immunity according to the chancellor's foot, for standards established by the Legislature.

Any person may knowingly and intelligently waive his constitutional rights, but no court or referee can force him to waive them without a compensating protection which, here, was the right not to be prosecuted or subjected to any penalty or forfeiture from any matter about which petitioner was

compelled to testify. (Unemp. Ins. Code, § 1955.) It is unfortunate that the testimony petitioner was ordered to give after claiming immunity added nothing to the unemployment case; there was really no compelling reason for the referee to order petitioner to answer. But immunity cannot rest on an after-the-fact appraisal of the circumstances, for this would be to substitute judicial discretion for legislative standards.

Real party in interest contends that since Unemployment Insurance Code section 1954 provides: ''Obedience to subpenas issued in accordance with this chapter may be enforced by application to the superior court as set forth in Article 2, Chapter 2, Part 1 of Division 3 of Title 2 of the Government Code,'' only the superior court can compel a witness to testify and thereby clothe him with immunity under section 1955. To so hold would do violence to the clear and unambiguous wording of section 1955. The Legislature did not condition immunity upon an order of the superior court pursuant to section 1954; neither did it place any other procedural or jurisdictional limitations upon a referee's discretion whether to order a witness to testify.

Finally, the district attorney cannot negate the immunity provided by section 1955 by offering to stipulate not to use against petitioner in the criminal prosecution, the testimony given by her at the Unemployment Insurance Appeals Board hearing. The statutory immunity here derives from the giving of testimony under the circumstances delineated by section 1955, not upon whether the testimony once given, is or is not used against the witness. The district attorney cannot, by devising his own voluntary exclusionary rule, unring the bell. Section 1955, as heretofore pointed out, does not simply forbid the use of testimony given under order of the referee; it provides that no individual shall be *prosecuted* or subjected to *any penalty* or *forfeiture*.

Let a peremptory writ of prohibition issue.

Gargano, J., concurred.

CONLEY, P. J. — I dissent. In my opinion, this is an example of an inexcusable attempt to secure an ''immunity bath'' by a person previously informed against for a major crime. Esther Escamilla and her husband, Francisco Escamilla, were employees of Farmers Supply Market in Reedley; she worked for the person having the franchise to sell liquor, and he for the proprietors of the general store. On May 2,

1968, she was arrested on suspicion of grand theft from her employer and a specific felony charge was set forth in an information, which alleged that she had stolen over $200 from her employer; information received at the hearing hereinafter mentioned was that she had converted to her own use some $1,500 of her employer's money during the time that she and her husband, on relatively meager combined salaries, were maintaining the upkeep of five automobiles, a new house, bail for Francisco on a charge of driving while intoxicated, and paying various other expenses. In turn, the husband was discharged from his employment as a box boy in the market for inattention to duties, involving an arrest for drunken driving and a collision with another car, and he thereafter applied for unemployment insurance. When notified of this application, his employer objected, claiming that Francisco had been guilty of misconduct in that he had not been a dependable employee. In the formal charge there was no mention of the suspicion of his wife's theft, although evidence received at the hearing indicated that the employer was somewhat alienated against him by the fact that the wife had stolen substantially from the holder of the liquor concession.

A hearing was held before a referee at which the husband was represented by an attorney, and the wife also took her lawyer with her to the hearing. There can be but one legitimate conclusion from the evidence heard by the referee, namely, that the attempt to give Mrs. Escamilla the "immunity bath," which she very evidently desired, was a contrived effort, and that the ruling which it is claimed, in effect, quashed the criminal charge against the wife, was forced upon the referee. Certain apparently inconsequential questions were objected to by Mrs. Escamilla's lawyer on the ground that she did not have to answer them, because the answers might tend to incriminate her. These objections were originally all sustained by the referee, but the attorney for Francisco insisted time after time that she be permitted to give answers to these far-flung queries. And, finally, 'Mrs. Escamilla was asked straight-out by the attorney for her husband if she stole any money from the employer. She was so anxious to further the attempt to secure immunity that she answered the question before her attorney had a chance to object on the ground that it might tend to incriminate her. Finally, the attorney for the employee told the referee that Mrs. Escamilla would not have to cover the same ground in testimony at any other time, and thus induced her to permit the incriminating question. Our

law has no sympathy with connivance or collusion by a defendant. (See *Hampton* v. *Municipal Court*, 242 Cal.App.2d 689, 693 [51 Cal.Rptr. 760].)

Unquestionably, the answers given by Mrs. Escamilla did tend to incriminate her. But it seems clear that the circumstances of the case show that the answers were not involuntary within the meaning of the law relative to the acquirement of immunity. (*In re Connolly*, 16 Cal.App.2d 709, 718 [61 P.2d 490].) However, it is an understandable view that, under the specific code sections relating to this inquiry, the referee did not have a right to compel Mrs. Escamilla to answer, but that it was a matter for the superior court to rule upon under the applicable code sections.

Essentially, immunity is given by the state in a proper case to require a knowledgeable witness to give testimony relative to incriminating matters touching other persons involved in the crime being considered. It is not designed to furnish a gratuity for lawbreakers. The laws concerning the granting of immunity ordinarily limit the availability of this device by prescribing various requirements as conditions precedent to its enforcement. (*The Privilege Against Self-incrimination in the Federal Courts* (1957) 70 Harv.L.Rev. 1454, 1462.) Because of the situation thus involved it usually has been required that the state approve the granting of immunity through the courts, which have general jurisdiction over crimes. In the instant case, at the hearing before the referee for the Unemployment Insurance Commission the District Attorney of Fresno County was in no way involved. The Superior Court of Fresno County had previously ruled on the information charging Mrs. Escamilla with grand theft, and it is now contended that the referee for the Unemployment Insurance Commission was enabled to stop the prosecution of Mrs. Escamilla for a major crime in connection with an inquiry that was not vitally involved and, hence, was wholly unnecessary.

The sections of the Unemployment Insurance Code give the method of enforcement of answers in a proceeding of this kind where immunity is involved, and they were not followed. A number of requirements are set forth in order to enforce the principle that immunity is not to be lightly given, but is a matter for the state to consider through the courts having jurisdiction to try accusations of crime. The apposite sections require several conditions prior to the granting of immunity: the first is the necessity that the person seeking clearance of

an accusation of crime shall be subpoenaed or, in other words, placed in a position where he or she might be forced to testify contrary to the right of silence granted by the Constitution. It is conceded that there was no such subpoena in this case. Mrs. Escamilla, surrounded by a staff of attorneys, came to court willingly and in accordance with plan. The excuse tendered for this fact was that her husband spoke Spanish, although he testified in English in part and has lived in this community for a number of years, and that his wife would act as his interpreter.

Incidentally, Mrs. Escamilla was by no means an experienced or proficient interpreter. She did not know or apply elementary principles of interpreting. For example, instead of translating the exact answers made by her husband, she would say, ''He says,'' or ''He did not do so and so.'' This failure to do a workmanlike job is noteworthy because of the fact that, as is said by the Attorney General's deputy, the Unemployment Insurance Commission always supplies an interpreter where necessary without cost to those interested in the hearing.

One applicable provision of law is contained in section 1955 of the Unemployment Insurance Code as follows: ''No person shall be excused from attending and testifying or from producing books, papers, correspondence, memoranda and other records as required by a subpena issued pursuant to this chapter on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture. No individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise. Nothing in this section exempts any individual from prosecution and punishment for perjury committed in so testifying.'' There can be no question that the hearing officer may issue subpoenas, administer oaths, and conduct the hearing as authorized in section 1955. However, the enforcement of subpoenas, in my opinion, must be required, if at all, under section 1954 of the Unemployment Insurance Code, by the superior court. That section reads as follows: ''Obedience to subpenas issued in accordance with this chapter may be enforced by application to the superior court as set forth in Article 2, Chapter 2, Part 1 of Division 3 of Title 2 of the Government Code.'' If every referee repre-

senting the many commissions of the state may do away with criminal charges, as in this case, the laws of the commonwealth are, in the last analysis, uncertain and subject to control by a variety of persons under circumstances that will inevitably induce contempt for a system which approves such results.

Incidentally, the District Attorney of Fresno County has undertaken, in open court, not to use the acknowledgment of crime made by the defendant at the hearing.

I would deny the application for a writ.

A petition for a rehearing was denied May 8, 1969. Conley, P. J., was of the opinion that the petition should be granted. The petition of the real party in interest for a hearing by the Supreme Court was denied June 4, 1969. McComb, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.