TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-212 |
| of | : | |
| | : | September 16, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE CHUCK QUACKENBUSH, INSURANCE COMMISSIONER, has requested an opinion on the following question:

May investigators employed in the fraud division of the Department of Insurance issue administrative subpoenas to obtain evidence or testimony during criminal investigations being conducted by the Department of Insurance?

CONCLUSION

Investigators employed in the fraud division of the Department of Insurance may issue administrative subpoenas to obtain evidence or testimony during criminal investigations being conducted by the Department of Insurance; however, if a person is compelled to testify after claiming his privilege against self-incrimination, immunity from criminal prosecution must be granted concerning the matter.

ANALYSIS

The Department of Insurance ("Department") is charged with enforcing laws prohibiting insurance fraud. Section 1872 of the Insurance Code[1] provides:

_____

[1] All references hereafter to the Insurance Code are by section number only.

"There is created within the department a Bureau of Fraudulent Claims to enforce the provisions of Section 1871.4 of this code, and Sections 549 and 550 of the Penal Code, and to administer the provisions of Article 3 (commencing with Section 1873)."

"Section 1871.4" relates specifically to workers' compensation fraud, which it makes unlawful. "Sections 549 and 550 of the Penal Code" cover all types of insurance fraud, making such acts unlawful. "Article 3" (§§ 1873-1873.4) concerns the reporting of insurance fraud to government agencies.

The question presented for resolution concerns the powers of Department investigators who are responsible for enforcing the insurance fraud statutes. May they issue subpoenas to obtain evidence or testimony when conducting a criminal investigation? We conclude that they may; however, immunity from criminal prosecution must be given to anyone whose testimony is compelled after claiming his privilege against self-incrimination.

The two statutes requiring our analysis are sections 1872.3 and 12924. Section 1872.3 provides with respect to the Bureau of Fraudulent Claims:

"(a) If, by its own inquiries or as a result of complaints, the Bureau of Fraudulent Claims has reason to believe that a person has engaged in, or is engaging in, an act or practice that violates Section 1871.4 of this code, or Section 549 or 550 of the Penal Code, the commissioner in his or her discretion (1) may make those public or private investigations within or outside of this state that he or she deems necessary to determine whether any person has violated or is about to violate any provision of Section 1871.4 of this code, or Section 549 or 550 of the Penal Code, or to aid in the enforcement of this chapter, and (2) may publish information concerning any violation of this chapter or Section 550 of the Penal Code.

"(b) *For purposes of any investigation under this section, the commissioner or any officer designated by the commissioner may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, agreements, or other documents or records that the commissioner deems relevant or material to the inquiry, as provided by Section 12924.*

"(c) If any matter that the commissioner seeks to obtain by request is located outside the state, the person so requested may make it available to the commissioner or his or her representative to be examined at the place where it is located. The commissioner may designate representatives, including officials of the state in which the matter is located, to inspect the matter on his or her behalf, and he or she may respond to similar requests from officials of other states.

"(d) Except as provided in subdivision (e), the department's papers, documents, reports, or evidence relative to the subject of an investigation under this section shall not be subject to public inspection for so long a period as the commissioner deems reasonably necessary to complete the investigation, to protect the person investigated from unwarranted injury, or to serve the public interest. Furthermore, those papers, documents, reports, or evidence shall not be subject to subpoena or subpoena duces tecum until opened for public inspection by the commissioner, unless the commissioner otherwise consents or, after notice to the commissioner and a hearing, the superior court determines that the public interest and any ongoing investigation by the commissioner would not be unnecessarily jeopardized by compliance with the subpoena duces tecum.

"(e) The Bureau of Fraudulent Claims shall furnish all papers, documents, reports, complaints, or other facts or evidence to any police, sheriff, or other law enforcement agency, when so requested, and shall assist and cooperate with those law enforcement agencies." (Italics added.)

Section 12924, incorporated by reference in subdivision (b) of section 1872.3, provides:

"(a) The commissioner may issue subpoenas and subpoenas duces tecum for witnesses to attend, testify and produce documents before him, on any subject touching insurance business, or in aid of his duties. Such process may be served, obeyed, and enforced as provided in the Code of Civil Procedure for civil cases. A defaulting witness may, upon application by the commissioner to the superior court, be required by order of such court to appear before the commissioner to testify as the court may order. The court may punish disobedience of its order as a contempt of court.

"All the provisions of the Code of Civil Procedure relating to means of production of evidence shall be applicable to any hearing or investigation under this section. The provisions of this subdivision shall not apply to proceedings required by other provisions of this code to be conducted in accordance with Chapter 5 (commencing with Section 11500), Part l, Division 3, Title 2 of the Government Code.

"(b) A person shall not be excused from testifying or from producing any book, document, or other thing under his control upon any such hearing or investigation on the ground that his testimony, or the book, document, or other thing required of him, may tend to incriminate him, or may have a tendency to subject him to punishment for a felony or misdemeanor; but *no individual shall be prosecuted or be subjected to punishment for a felony or misdemeanor for or on account of any act, transaction, matter or thing concerning which he is so compelled, after validly claiming his privilege against self-incrimination, to testify or produce,* except for perjury or contempt committed in such testimony." (Italics added.)

In analyzing the provisions of sections 1872.3 and 12924, we apply well established principles of statutory construction. "When interpreting a statute our primary task is to determine the

Legislature's intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) When "`statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.'" (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73.) "`[C]ourts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.'" (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097.) "`[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.)

Applying these principles of statutory interpretation, we find that investigators employed in the fraud division of the Department, when designated by the Insurance Commissioner ("Commissioner"), "may . . . subpoena witnesses . . . and require the production of any books, papers, correspondence, memoranda, agreements, or other documents . . . ." (§ 1872.3, subd. (b).)[2] Obtaining the evidence and testimony, however, must be "as provided by Section 12924." (*Ibid.*) Section 12924, subdivision (b), prohibits a person from being "prosecuted or . . . subjected to punishment . . . for or on account of any act, transaction, matter or thing concerning which he is compelled . . . to testify or produce . . . ."

Reading these two statutes together, therefore, we conclude that while the Department's fraud investigators have the power to issue administrative subpoenas during a criminal investigation (§ 1872.3, subd. (b)), the person subpoenaed receives what is known as "transactional immunity" (§ 12924, subd. (b)). He or she may not be prosecuted on account of any act for which testimony is compelled after claiming the privilege against self-incrimination. (See Pen. Code, §§ 1324, 1324.1; *People* v. *Hunter* (1989) 49 Cal.3d 957, 973, fn. 4; *People* v. *Cooke* (1993) 16 Cal.App.4th 1361, 1366; *People* v. *Campbell* (1982) 137 Cal.App.3d 867, 873-875; *Escamilla* v. *Superior Court* (1969) 271 Cal.App.2d 730, 732-735.)

Sections 1872.3 and 12924 are similar to the general provisions found in the Government Code concerning the issuance of administrative subpoenas. (See Gov. Code, §§ 11180-11188; *Brovelli* v. *Superior Court, supra,* 56 Cal.2d at 529; *People* v. *Pappalardo* (1993) 12 Cal.App.4th 1723, 1730; *Pinney* v. *Phillips* (1991) 230 Cal.App.3d 1570, 1586-1588.) The enforcement of administrative subpoenas has been examined in numerous contexts. (See *United States* v. *La Salle National Bank* (1978) 437 U.S. 298; *See* v. *City of Seattle* (1967) 387 U.S. 541; *Reisman* v. *Caplin* (1964) 375 U.S. 440; *Parris* v. *Zolin* (1996) 12 Cal.4th 839; *People* v. *King* (1967) 66 Cal.2d 633; *Shively* v. *Stewart* (1966) 65 Cal.2d 475; *People* ex rel. *Franchise Tax Bd.* v. *Superior Court* (1985) 164 Cal.App.3d 526; *Barnes* v. *Molino* (1980) 103 Cal.App.3d 46; *Board of Medical Quality Assurance* v. *Gheradini* (1979) 93 Cal.App.3d 669; *Fielder* v. *Berkeley Properties Co.* (1972) 23

---

[2]We assume that the subpoena relates to an inquiry which the Department is authorized to make, seeks information reasonably relevant to that inquiry, and is not too indefinite. (*United States* v. *Morton Salt Co.* (1950) 338 U.S. 632, 652-653; *Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529.

Cal.App.3d 30; *Escamilla* v. *Superior Court*, *supra*, 271 Cal.App.2d 730; *People* v. *White* (1932) 124 Cal.App. 548.)

Here, the legislative emphasis in sections 1872.3 and 12924 is upon the discovery, prosecution, and elimination of fraud with respect to auto insurance, workers compensation insurance, and health insurance. We find inapplicable such cases as *United States* v. *La Salle National Bank*, *supra*, 437 U.S. 298, *Donaldson* v. *United States* (1971) 400 U.S. 517, and *Boren* v. *Tucker* (9th Cir. 1956) 239 F.2d 767, involving the issuance of a summons by the Internal Revenue Service to investigate tax fraud. The state statutes in question are distinctively different from the federal statutes considered by the courts in those cases. More importantly, Congress has changed the federal statutes to eliminate the requirement of a civil component for issuance of a tax fraud summons. (See *Weiss* v. *C.I.R.* (9th Cir. 1990) 919 F.2d 115, 116-117, fn. 1; *U.S.* v. *Abrahams* (9th Cir. 1990) 905 F.2d 1276, 1281, fn. 4.)

In summary, the Insurance Code grants the Commissioner and his representatives wide latitude to investigate insurance fraud. In aid thereof, they have the power to issue administrative subpoenas to obtain the production of books and records or testimony at any time and for any legitimate investigative purpose, whether with respect to a civil or criminal matter. However, the person subpoenaed must be granted transactional immunity for any act which is the subject of compelled testimony after his claiming the privilege against self-incrimination.

We thus conclude that if so authorized by the Commissioner, investigators in the fraud division of the Department may issue administrative subpoenas to obtain evidence or testimony when conducting criminal investigations; however, if a person is compelled to testify after claiming his privilege against self-incrimination, immunity from criminal prosecution must be granted concerning the matter.

* * * * *