**ELECTRICAL SPECIALTIES, INC., Travelers Casualty and Surety Company of America, and Oberle & Associates, Inc., Appellants–Defendants,**

v.

**SIEMENS BUILDING TECHNOLOGIES, INC., Appellee–Plaintiff.**

No. 49A02–0407–CV–596.

Court of Appeals of Indiana.

Nov. 30, 2005.

Joseph M. Leone, Sean T. Devenney, Drewry Simmons Vornehm, LLP, Indianapolis, for Appellants.

Sue Figert Meyer, R. Brock Jordan, Gene A. Wheeler, Rubin & Levin, P.C., Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### *STATEMENT OF THE CASE*

Oberle & Associates, Inc. (hereinafter "Oberle") and Travelers Casualty and Surety Company of America (hereinafter "Travelers") appeal from the trial court's denial of their joint motion for summary judgment against Siemens Building Technologies, Inc. (hereinafter "Siemens").

We affirm.

### *ISSUE*

Whether the trial court erred by granting Siemens' motion for summary judgment and denying Oberle and Travelers' joint motion for summary judgment.[1]

---

1. Oberle also raised a second issue on appeal, whether the trial court properly found that Siemens was a third party beneficiary of a contract between the State of Indiana and Oberle. However, our holding on the first

### FACTS

In early 2001, Oberle entered into a contract with the State of Indiana for the improvement of the Clinical Treatment Center of Richmond State Hospital (hereinafter "Project"). Oberle was to serve as the general contractor. Oberle, in compliance with Indiana Code section 4–13.6–7–6(a)(2) [2], obtained a contractor's payment bond through Travelers, to ensure its statutory payment obligation.

In April 2001, Oberle entered into a subcontract agreement with Electrical Specialties, Inc. (hereinafter "ESI"). ESI was to provide electrical work on the Project. ESI, in turn, hired Siemens as its subcontractor to install fire alarm, intercom, CCTV, and music systems for the Project. On October 10, 2002, Siemens performed its last work on the Project and notified ESI of its completion by sending it a job completion form. Siemens' labor and materials totaled $107,964.00 for the Project and was invoiced to ESI. ESI paid Siemens $2,999.66, resulting in a balance due and owing of $104,334.34. ESI made no further payment to Siemens. However, from May 21, 2001 through January 23, 2003, ESI submitted to Oberle partial waiver of lien, wherein ESI averred "no other person or party has any right to a lien or claim on account of any labor or work performed or material, supplies, or equipment furnished by, to or through [ESI], on or before the date hereof," essentially stating that all work performed on ESI's behalf had been fully compensated. (App.99, 100, 101). Oberle included ESI's Partial Waiver of Lien forms in its application for payment to the State. The State paid Oberle, and Oberle paid ESI.

Subsequently, on June 9, 2003, pursuant to Indiana Code section 4–13.6–7–10, Siemens filed a Subcontractor's Verified Claim with the State. The claim contained the following:

> Bond: The sum of $107,964.00 is due the undersigned on account of such labor, materials, or services. This notice is being sent within 60 days after any contractor, subcontractor, materialman, etc. last provided any materials or performed any labor or services in conformance with the decision of the court in *Indiana Carpenters Pension Fund v. Seaboard*, 601 N.E.2d 352 (Ind.App. 1992) *trans. denied.*

(App.123). The claim stated that neither ESI, Oberle, nor Travelers had paid the amount owed to Siemens.

On July 21, 2003, Siemens filed an action against ESI, Oberle, and Travelers. Siemens' claim against Oberle was based upon Oberle's statutory obligation, as the general contractor, to pay "all persons, subcontractors, and corporations furnishing materials or performing labor for the Project;" and, against Travelers, as surety on Oberle's payment bond, to pay Siemens for services performed on the Project, if Oberle were to default. (App.14). Siemens' prayer for relief was for judgment against Travelers.

Oberle and Travelers filed a joint motion for summary judgment, and Siemens filed a cross motion for summary judgment. Briefs were filed in support of each mo-

---

issue renders this issue moot. Therefore, we decline to review it.

**2.** If the estimated cost of a public works project is at least one hundred fifty thousand dollars ($150,000) or more, the division shall require the contractor to execute a good and sufficient payment bond to the department for the state in an amount equal to one hundred percent (100%) of the total contract price. The bond shall directly inure to the benefit of subcontractors, laborers, suppliers, and those performing service or who may have furnished or supplied labor, material, or service in relation to the public work.

tion, and on June 18, 2004, a hearing was held. The matter was taken under advisement, and on June 24, 2004, the trial court entered an order granting summary judgment in favor of Siemens and holding Travelers and Oberle jointly and severally liable in the amount of $113,046.97. This appeal ensued.

### DECISION

"On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Fifth Third Bank v. Comark, Inc.*, 794 N.E.2d 433, 437 (Ind.Ct.App.2003); *see also* Ind. Trial Rule 56(C). We give careful scrutiny to the pleadings and designated materials, construing them in a light most favorable to the non-movant. *Id.* Finally, a trial court's decision on a motion for summary judgment enters the process of appellate review clothed with a presumption of validity. *Rodriguez v. Tech Credit Union Corp.*, 824 N.E.2d 442, 446 (Ind.Ct.App.2005).

The facts in this matter are undisputed. Therefore, the questions on appeal are questions of law.

Indiana Code section 4–13.6 governs state public works projects costing $150,000 or more, though it can be applied to projects of lesser amounts. I.C. §§ 4–13.6–7–7, 4–13.6–7–1. General contractors involved in projects under Indiana Code section 4–13.6, with an estimated cost of $150,000 or more, are required by statute to execute a payment bond for the benefit of subcontractors and suppliers working on such projects. Additionally, the statute requires the division [3] to include within the general contractors' contracts a provision for retainage [4] of a portion of payments made by the division to the contractor. I.C. § 4–13.6–7–2. The payment bond and the retainage provisions establish two sources of funds from which a subcontractor or supplier, who has not been paid, can file a claim for payment with the division against those funds. I.C. § 4–13.6–7–10.

Oberle/Travelers argues that the trial court erred in granting Siemens' motion for summary judgment because their claim for payment was untimely filed. We disagree.

 In general, when subcontractors have provided labor, materials, or have supplied services on private projects, they are entitled to file mechanic's liens against the private property and subsequently foreclose on the property, if not paid. *See* I.C. § 32–28–3–1. However, liens cannot be filed against public property. *J.S. Sweet Co., Inc. v. White County Bridge Com'n*, 714 N.E.2d 219, 223 (Ind.Ct.App. 1999). Thus, Indiana has codified specific protections for the benefit of subcontractors and suppliers who perform labor or provide material or service on a public works project. There are statutes that protect these individuals when they are involved in state highway projects, municipal projects, or state public works projects and these statutes share a common purpose and origin. *See* I.C. § 8–23–9–10; I.C. § 36–1–12–13.1; I.C. § 5–16–5–2; I.C. § 4–13.6–7–6, respectively.

---

**3.** Division refers to the public works division of the Department of Administration.

**4.** Retainage means any amount to be withheld from a payment to a contractor or subcon-

tractor under the terms of a contract until the occurrence of a specified event. I.C. § 4–13.6–1–17

██ The forerunner of Indiana's public works payment bond statutes and other states that have similar statutes is The Miller Act, originally enacted in 1935[5]; state statutes are often referred to as Little Miller Acts. The Miller Act (The Act) is a federal act that requires general contractors hired on federal public works projects to secure a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided." 40 U.S.C. § 3131(b)(2). The Act establishes rights of persons furnishing labor or material on federal public works projects; and, further provides "Every person that has furnished labor or material ... may bring a civil action on the payment bond..." 40 U.S.C. § 3133(b)(1). The purpose of the Act and the parallel payment bond required by Indiana's statutes is "to protect the otherwise unprotected [subcontractors,] materialmen (sic) and laborers on public projects." *Ind. Carpenters Central and Western Indiana Pen. Fund v. Seaboard Surety Co.*, 601 N.E.2d 352, 355 (Ind.Ct.App.1992). Also, "Indiana courts have looked to cases interpreting the Miller Act when interpreting state statutory payment bonds." *See Indiana Carpenters*, 601 N.E.2d at 354.

Indiana Code section 4–13.6–7–6 mandates that a general contractor involved in a public works project must execute a payment bond for 100% of the total contract price. The payment bond inures to the benefit of subcontractors, laborers, suppliers, and materialmen providing or performing services on public works projects. *Id.* When a general contractor defaults or fails to pay, the remedy available to a subcontractor/supplier is twofold. A claim for payment can either be paid out of funds that are being retained by the State agency for the general contractor or a claim can be made against the surety holding the payment bond of the general contractor. I.C. §§ 4–13.6–7–9;–11.

In order to proceed either against the retained funds or payment bond, a claimant must first file a verified claim—the procedure for which is set out in Indiana Code section 4–13.6–7–10. Section 10 has three subsections. In pertinent part, subsection (a) reads as follows:

> In order to receive payment ... any subcontractor or supplier making a claim for payment on account of having performed any labor or having furnished any material or service in relation to a public works project **must file a verified claim with the division within sixty (60) days from the last labor performed, last material furnished, or last service rendered.** The claim shall state the amount due and owing to the person and shall give as much detail explaining the claim as possible.

(emphasis added). The highlighted language above is the source of contention between the parties. Oberle maintains that a claimant has 60 days from the last labor the claimant personally performed on the public works project to file a verified claim with the division. As a result, Oberle argues that because Siemens' claim was filed approximately eight months after the last labor Siemens performed, its claim was untimely. Siemens counters that a claimant has 60 days after **the last** labor, material, or services is provided or performed by anyone working on a public works project to file a verified claim. The trial court accepted the latter interpretation when it held that Siemens' claim was timely filed and granted Seimens' motion for summary judgment. It should be noted that the parties are in agreement that Siemens' claim was filed June 9, 2003, which was more than 60 days after the last

---

5. Presently found at 40 U.S.C. § 3131 et. seq. (2005).

work Siemens personally performed on the project but its claim was filed within 60 days of the last of any work performed on the project.

Statutory interpretation is a matter of law. *Perry–Worth Concerned Citizens v. Board of Com'rs of Boone County*, 723 N.E.2d 457, 459 (Ind.Ct.App.2000), *trans. denied.* We owe no deference to the trial court's interpretation. *Id.* When interpreting a statute, we look to the express language of the statute and the rules of statutory construction. *Indiana State Teachers Ass'n. v. Board of School Com'rs of City of Indianapolis*, 693 N.E.2d 972, 974 (Ind.Ct.App.1998). However, when a statute is clear and unambiguous, there is no need to apply any rules of construction other than requiring words and phrases to be taken in their plain, ordinary and usual sense. *Benham v. State*, 637 N.E.2d 133, 136 (Ind.1994). Statutes are to be examined and interpreted as a whole, *MDM Invs. v. City of Carmel*, 740 N.E.2d 929, 934 (Ind.Ct.App.2000). When construing a statute, we attempt to ascertain and give effect to the legislative intent. *Becker v. Four Points Investment Corp.*, 708 N.E.2d 29, 31 (Ind.Ct.App.1999), *trans. denied.* And in doing so, we consider the goals of the statute and the reasons and policy underlying its enactment. *MDM Invs.*, 740 N.E.2d at 934.

The language of Indiana Code section 4–13.6–7–10 pertaining to Indiana's public works projects is clear and unambiguous. Section 10(a) provides that a claim for payment must be filed by the claimant within 60 days of "**the last labor** performed, **last material** furnished, or **last service** rendered." *Id.* (emphasis added). Nearly identical language appears in a related statute, as found in Indiana Code section 36–1–12–12(b) (Public Construc-tion) which reads that a claimant "shall file their claims with the board within sixty (60) days after the last labor performed, last material furnished, or last service rendered **by them...**" (emphasis added). In the latter statute, the legislature chose to link the 60 day filing period with that of the claimant's personal labor, material, or service by ending the series with the prepositional phrase "by them" which modifies or explains whose "labor," "material," or "service" is being referred to. However, because nothing follows the word "rendered," in Indiana Code section 4–13.6–7–10(a), we understand the legislature's use of the word "last" to be used in its ultimate sense, and to mean the last labor performed, material furnished, or service rendered **on the project**.

In addition to the plain language of Indiana Code section 4–13.6–7–10(a), this court has previously interpreted a 60 day filing period as being measured against the life of the project, and not the individual work of the claimant. The language the court used in *Indiana Carpenters* is instructive and provides a strong public policy statement regarding the purpose of Indiana's required public works payment bond statute.

We acknowledge that the court in *Indiana Carpenters* interprets Indiana Code section 36–1–12–13.1(d) but we find its rationale would be logically extended to this case. *Indiana Carpenters* involved a subcontractor to a public works contract with the city of Indianapolis wherein the subcontractor was party to a collective bargaining agreement with its employees. The collective bargaining agreement required that the subcontractor pay fringe benefits to Carpenters[6] as part of the employees' wages. The subcontractor

---

**6.** Carpenters is an employee welfare benefit plan which receives contributions from em-ployers on behalf of employee members. *Id.* at 354.

failed to pay those benefits for a number of months and Carpenters brought an action against the surety of the general contractor for the missed payments by the subcontractor. Indiana Code section 36-1-12-13.1(d) reads: "A person to whom money is due for labor performed, material furnished, or services provided shall, within sixty (60) days after the completion of the labor or service, or within sixty (60) days after the last item of material has been furnished, file with the board signed duplicate statements of the amount due." In interpreting Indiana Code section 36-1-12-13.1(d), the court in *Indiana Carpenters* held that "[t]hese statutes do not have as their purpose the narrowing of a claimant's rights; rather they expand the rights of claimants who would be left without the ability to recover[ ] for the materials, labors, or services if general contractors and public entities were unable to make payment." 601 N.E.2d at 357. The court reasoned "a subcontractor, material provider, laborer, or service performer will not necessarily know within sixty (60) days of the date of their last labor or services or material whether their claim will be paid." *Id.* at 358. The court therefore concluded that in reference to the 60 day period for filing a claim that "[t]he time commences from that date when the last material is provided or the last labor or service is performed by any subcontractor, laborer, service provider, or materialman, on the public works project." *Id.*

In the case of *American States Ins. v. Floyd I. Staub, Inc.*, this court held that the principle underlying the requirement that general contractors post a payment bond was for the benefit of subcontractors, laborers, and material suppliers. 175 Ind. App. 244, 370 N.E.2d 989 (Ind.Ct.App. 1977). By analogy, Staub, the subcontractor was not paid by the general contractor and Staub failed to file a claim for payment with the overseeing governmental body within the 60 day statutorily proscribed period. Staub then filed an action against the general contractor's surety, American States Insurance (American States) for payment after the expiration of the 60 day filing period. American States argued that because Staub executed a waiver and release of lien, it was released from liability on the surety bond as Travelers in this case. This court held that "[t]he subcontractor, however, is not prevented from suing the principal or surety on the bond merely because he did not exercise the privilege given him to proceed against the City to impound the money due the contractor." *Id.* at 994.

Therefore, based upon the provisions within the relevant portions of Title 4 and the rationale of Indiana case law, we find that Siemens' action against Travelers was timely filed and the trial court did not err by granting Siemens' motion for summary judgment.

Affirmed.

MAY, J., and BARNES, J., concur.