**Sandra K. PENNY, Appellant,**

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, Appellee.**

No. 93A02–0506–EX–577.

Court of Appeals of Indiana.

Aug. 18, 2006.

William C. Moyer, Lorch & Naville, LLC, New Albany, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

The Indiana Department of Workforce Development ("the Department") determined Sandra Penny failed to disclose earnings while she was receiving unemployment benefits. She was disqualified for unemployment benefits and ordered to repay the excess benefits she received. The Review Board affirmed. Penny asserts on appeal the Review Board should not have penalized her for improperly receiving unemployment benefits because she had immunity pursuant to Ind.Code § 22-4-17-9.

We agree the statute provided Penny immunity, and the Department, having invoked the statute to force Penny to testify, cannot now subject her to a penalty or forfeiture based on the information she provided. However, the Board's order that Penny repay benefits to which she was not entitled was not a "penalty," and the immunity the statute provides does not protect her from that part of the order.[1] We accordingly affirm in part and reverse in part.[2]

## FACTS AND PROCEDURAL HISTORY

Penny applied for unemployment benefits in August of 2003 and claimed benefits through November of 2003. She indicated she had no earnings during that period, but she was employed by an American Legion post, earning about $600.00 a month. She also had earnings from other sources she did not report to the Department while claiming unemployment benefits. Penny reopened her claim in May of 2004 and again collected unemployment benefits without fully reporting earnings from employment.

In September 2004, an investigator for the Department told Penny she was under investigation and asked her to appear for an interview. Penny agreed to appear but advised the Department she planned to claim a privilege against self-incrimination and the Department would have to subpoena her to compel her testimony. This, Penny indicated, would entitle her to the protection of Ind.Code § 22-4-17-9, which states in pertinent part:

no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled after having claimed his privilege against self-incrimination to testify or produce evidence, documentary or otherwise, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying. Any testimony or evidence submitted in due course before the board, review board, an administrative law judge, or any duly authorized representative of any of them shall be deemed a communication presumptively privileged with respect to any civil action except actions to enforce the provisions of this article.

The Department issued a subpoena, Penny provided a statement, and the investigator determined Penny falsified or knowingly failed to disclose information about her earnings and thus received benefits to which she was not entitled. Penny requested a hearing before an administrative law judge, at which hearing she moved to dismiss on the ground she had immunity

1. Neither party addressed in its brief the question we find partially dispositive: whether an order that an unemployment claimant repay improperly-obtained benefits amounts to a "penalty or forfeiture" for which the statute provides immunity.

2. We heard oral argument in Indianapolis on June 12, 2006.

and could not be subjected to penalties. The ALJ denied the motion on the ground Penny's statement had not furthered the Department's investigation. He stated Penny's claim of privilege "does not prevent the Department from using evidence [the investigator] had already gathered...." (App. at 2.) The Review Board adopted the ALJ's findings of fact and conclusions of law and affirmed.

## DISCUSSION AND DECISION

■ When reviewing a decision by the Review Board, we determine whether the decision of the Board is reasonable in light of its findings. *Hughey v. Review Board*, 639 N.E.2d 1044, 1045 (Ind.Ct.App. 1994), *trans. denied.* The Board's findings of fact are generally conclusive and binding on us, *Winder v. Review Board*, 528 N.E.2d 854, 856 (Ind.Ct.App.1988), but when an appeal involves a question of law, we are not bound by the Board's interpretation of the law; we instead determine whether the Board correctly interpreted the law and correctly applied the applicable law. *Hughey*, 639 N.E.2d at 1046. The parties appear to agree this appeal involves the interpretation of Ind.Code § 22–4–17–9. As we are resolving a question of law, we review the Board's decision *de novo.*

### 1. The Nature of the Immunity

■ Penny argues at some length the statute provides transactional immunity, rather than use immunity or derivative use immunity. The Department does not address in its brief the nature of the immunity the statute provides. Instead, it argues the statute does not apply to actions to enforce the unemployment statutes. We need not decide the nature of the immunity the statute provides to resolve the case before us.[3]

■ The immunity provided in Ind.Code § 22–4–17–9 becomes available after an individual "is compelled after having claimed his privilege against self-incrimination to testify or produce evidence...." The Department does not dispute Penny claimed the privilege and was compelled to testify.

The Department finds an exception to the statute's protection in the final sentence: "Any testimony or evidence submit-

3. Three types of immunity may be granted a witness in exchange for his testimony. Transactional immunity prohibits the State from criminally prosecuting the witness for any transaction concerning that to which the witness testifies. Use immunity prohibits use at a subsequent criminal proceeding of testimony compelled of the witness. Derivative use immunity prohibits admission against a witness in a subsequent criminal prosecution of evidence obtained as a result of the witness' compelled testimony. *In re Caito*, 459 N.E.2d 1179, 1182–83 (Ind.1984), *cert. denied* 469 U.S. 805, 105 S.Ct. 62, 83 L.Ed.2d 13 (1984), *reh'g denied* 469 U.S. 1067, 105 S.Ct. 554, 83 L.Ed.2d 440 (1984). The Department characterizes the distinctions among the various types of immunity as "irrelevant" because this case is governed by the unemployment compensation act and the "immunity protections provided in the criminal statutes are not inapplicable." (Br. of Appellee Review Board at 12.) In the context of its argument, it appears the Department meant to say the criminal immunity protections were not *applicable.*

While we need not decide the nature of the immunity the statute provides, we note the language employed in this statute suggests the immunity is transactional. The language traditionally employed in transactional immunity statutes provides witnesses shall not be prosecuted or subjected to penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order, he gave an answer or produced evidence. *In re Contempt Findings Against Schultz*, 428 N.E.2d 1284, 1288 (Ind.Ct.App. 1981). Similarly, Ind.Code § 22–4–17–9 provides "no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled after having claimed his privilege against self-incrimination to testify or produce evidence."

ted in due course before the board, review board, an administrative law judge, or any duly authorized representative of any of them shall be deemed a communication presumptively privileged with respect to any civil action *except actions to enforce the provisions of this article.*" Ind.Code § 22–4–17–9 (emphasis supplied). Therefore, the Department asserts, the statute explicitly allows any testimony or evidence submitted before the Department to be used in actions to enforce the unemployment compensation act. Penny, the Department says, "appears to ignore the last sentence of the statute." (Br. of Appellee Review Board at 11.)

Penny does not; she instead correctly reads the statute as addressing two distinct matters—the scope of the privilege and the scope of the immunity provided. "Firstly, an individual who is compelled to testify enjoys transactional immunity. Secondly, *any* testimony (whether compelled or not) will be treated as privileged in any civil action." (Appellant's Reply Br. at 2) (emphasis in original). The last sentence of the statute, she asserts, addresses only the privilege and not the immunity, so it is not relevant to the issue before us.

Penny's interpretation is consistent with our prior decisions addressing this section, all of which indicate the "privilege" section of the statute is intended to protect from libel or defamation actions employers who provide information about an unemployment claimant's termination from employment.

In *Ernst v. Ind. Bell Tel. Co.*, 475 N.E.2d 351, 353 (Ind.Ct.App.1985), Ernst filed for unemployment benefits and Indiana Bell told the Department Ernst had not been injured on the job. This, Ernst alleged, "probably had an effect on cutting me off from some possible benefits

there" and amounted to defamation. *Id.* We noted the Department must promptly make a determination of eligibility when an individual files an unemployment claim, and if the employer knows facts that might affect the claimant's eligibility it "shall notify the [Department] of such facts promptly." *Id.* (citing Ind.Code § 22–4–17–2(c)). Because of this affirmative duty, Indiana Bell's statements did not constitute actionable defamation.

Ernst argued he did not, by filing an unemployment claim, consent to defamatory remarks made with malice or indifference to truth or falsity. We noted communications made in the course of unemployment administrative hearings are privileged, citing Ind.Code § 22–4–17–9, and determined nothing in Indiana Bell's statements caused the privilege to be lost. *Id.* at 356.

Similarly, *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172 (Ind.Ct.App. 1983), involved a defamation action arising out of statements an employer made to the Department in response to an unemployment claim. Howmet fired Lawson and accused him of vandalizing company property, and Lawson sued for defamation. We noted the statement made to the Employment Security Department was, by statute, protected by a qualified privilege. *Id.* at 1175 (citing Ind.Code § 22–4–17–9). We affirmed summary judgment for Howmet.

We found no Indiana decisions addressing the effect of the privilege against self-incrimination when a claimant is compelled to testify.[4] It is apparent from the decisions cited above and from the language of the statute that the statute does, as Penny asserts, address two different matters— protection from penalties that might follow

---

4. That privilege would presumably be asserted by unemployment claimants only, and not

by employers providing information in response to an unemployment claim.

from testimony compelled after the assertion of the privilege against self-incrimination, and protection from libel or defamation actions for employers who are obliged to provide information about the reason a former employee was discharged. "The issue at hand, however, is what is the scope of the immunity—not the scope of the privilege—granted by I.C. 22–4–17–9." (Appellant's Reply Br. at 2.)

Neither party directs us to decisions from Indiana or elsewhere that directly address this type of statutory immunity. However, one such decision was found, and it is consistent with Penny's interpretation of the statute. In *Escamilla v. Superior Court*, 271 Cal.App.2d 730, 76 Cal.Rptr. 704 (1969), Escamilla and her husband worked for the same employer. Escamilla was arrested on suspicion of theft from the employer, and her husband was fired. The husband applied for unemployment insurance and a hearing was held before a referee for the California Unemployment Insurance Appeals Board. The employer asserted the husband would have been discharged for his own misconduct much earlier but it was feared that might impair the criminal investigation of Escamilla.

The husband's attorney called Escamilla to the stand. She invoked her privilege against self-incrimination, and the referee forced her to answer questions relating to her theft. Escamilla then sought to restrain the trial court from proceeding with her prosecution for grand theft. The appeals court granted Escamilla's petition, holding pursuant to Cal. Unemp. Ins.Code § 1955, she was entitled to immunity because that section provided an individual could not be prosecuted for any transaction about which she was compelled to

testify after claiming her privilege against self-incrimination. *Id.* at 709.

The language of § 1955 of the California Unemployment Code is almost identical to that of Ind.Code § 22–4–17–9:

No person shall be excused from attending and testifying or from producing books, papers, correspondence, memoranda and other records as required by a subpoena issued pursuant to this chapter on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture. No individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise. Nothing in this section exempts any individual from prosecution and punishment for perjury committed in so testifying.[5]

(Footnote supplied.)

In *Escamilla,* the State, which was designated the real party in interest, argued a hearing officer for a state agency had no authority to grant immunity to one accused in a criminal action. But the court noted the legislature had not so limited the power delegated to a hearing officer under that section. 76 Cal.Rptr. at 708. Nor did our Indiana legislature in Ind.Code § 22–4–17–9. The court further noted: "When the Legislature creates an immunity statute it acts with full knowledge that the statute may protect a wrongdoer from prosecution." *Id.* at 709. We must decline to hold our Indiana legislature, in

---

5. The California provision does not include the language of the Indiana statute providing testimony or evidence submitted before an administrative law judge is "presumptively privileged with respect to any civil action

except actions to enforce the provisions of this article." As explained above we find that language applicable to the privilege provision and not to the immunity provision.

choosing the language of its similar immunity statute, acted without such "full knowledge." The statute does provide Penny immunity.

### 2. Imposition of Penalties on Penny— The "Public Policy" Argument

 Typically, we apply the express language of the statute in its construction. In re J.Q., 836 N.E.2d 961, 965 (Ind.Ct. App.2005), reh'g denied. But where the language of a statute is susceptible to more than one reasonable construction, we must construe it to give effect to the legislature's intent. Id. We examine the statute as a whole, with the presumption the legislature intended the language used in the statute be applied logically and not to bring about an unjust or absurd result. Id.

The Department asserts, without citation to authority, that the "likely" legislative intent behind the statute was to alleviate fears that a person's testimony might be used against her "in some ancillary litigation." (Br. of Appellee Review Board at 13.) It asserts adopting Penny's interpretation of the statute would lead to the absurd result that a claimant who committed fraud could avoid penalties or forfeitures just by invoking the statute. This, the Department asserts without explanation, would "render fraud investigations useless, and the Department's attempts to recapture wrongfully-obtained unemployment benefits pointless." (Id.) "Without the ability to effectively investigate fraudu-lent claims, the Department cannot function effectively and cannot safeguard the integrity of Unemployment Compensation System." (Id.)

As explained below, our interpretation of the statute does not affect "the Department's attempts to recapture wrongfully-obtained unemployment benefits" because such "recapture" does not amount to a penalty or forfeiture. We find unconvincing the Department's assertion that the immunity the legislature has provided will "render fraud investigations useless." This seems akin to the argument that the constitutional protections against self-incrimination found in the Fifth and Fourteenth Amendments of the U.S. Constitution and article I, section 14 of the Indiana Constitution, see Malinski v. State, 794 N.E.2d 1071, 1076 (Ind.2003), have made criminal investigations "useless." We decline the Department's invitation to so hold. As Penny notes, it is the Department, and not the claimant, that decides whether compelled testimony will be sought and immunity will accordingly arise.[6]

Penny's interpretation of the statute is consistent with our prior decisions and her interpretation does not lead to an absurd result. See Escamilla, 76 Cal.Rptr. at 709. We accordingly find the last sentence of the statute applies only to those provisions addressing an employer's privilege regarding otherwise-defamatory statements about the reason a claimant's employment was terminated.

---

**6.** The Department's argument the immunity the legislature has provided would "render fraud investigations useless" (Br. of Appellee Review Board at 13) and deprive it of "the ability to effectively investigate fraudulent claims" (id.) seems inconsistent with its alternative argument that "[a]bsent Penny's statement, the Department possessed abundant evidence that Penny had submitted fraudulent vouchers" (id. at 14), and that Penny's assertion of the privilege against self-incrimination did not prevent the Department from using evidence it had already gathered. The ALJ explicitly stated in his decision that "Nothing [Penny] said furthered [the fraud] investigation whatsoever ... [t]he ALJ therefore concludes that claimant has no right of immunity granted under IC 22–4–17–9 as claimed." (App. at 2.) The Review Board explicitly adopted and incorporated the ALJ's findings and conclusions.

### 3. The "Penalties" or "Forfeiture" against which the Statute Protects [7]

■ Penny asserts the Department's decision to compel her testimony immunizes her from "any penalty for any offense to which her compelled testimony relates." (Appellant's Br. at 11.) We agree, to the extent Penny was subjected to a "penalty."

■ We decline to hold the Board's order that Penny repay benefits she was paid, but to which she was never entitled, imposes a "penalty" on her.[8] Penny was, however, subjected to a penalty or forfeiture in the form of cancellation of the wage credits on which her future eligibility for unemployment benefits would be based.

To be eligible for unemployment benefits an individual must establish wage credits in a specified amount during a specified period, Ind.Code § 22–4–14–5; the amount of wage credits determines the weekly benefit. Ind.Code § 22–4–12–4. Our legislature has explicitly termed this a forfeiture; Ind.Code § 22–4–16–1 states unemployment benefits are "forfeited" when an individual claims unemployment benefits to which she is not entitled:

> Notwithstanding any other provisions of this article, if an individual knowingly fails to disclose amounts earned during any week in his waiting period, benefit period, or extended benefit period with respect to which benefit rights or extended benefit rights are claimed, or knowingly fails to disclose or has falsified as to any fact which would have disqualified him or rendered him ineligible for benefits or extended benefits or would have reduced his benefit rights or extended benefit rights during such a week, *all of his wage credits established prior to the week of the falsification or failure to disclose shall be cancelled, and any benefits or extended benefits which might otherwise have become payable to him and any benefit rights or extended benefit rights based upon those wage credits shall be forfeited.*

(Emphasis supplied.) The Department's order provided "[a]ll wage credits based on earnings received prior to 8–23–03 and 7–10–04 are cancelled." [9] (App. at 22.) We reverse this forfeiture.

---

7. We do not read the statute as narrowly as does the dissent, which would find the immunity provision applicable only to criminal prosecutions. The dissent asserts that provision "by its own language, deals solely with immunity in criminal prosecutions." (Op. at 962.) No language in section 22–4–17–9 explicitly so limits the immunity. Rather, the language of the statute explicitly provides for an immunity from "penalty or forfeiture" *in addition to* immunity from prosecution: "no individual shall be prosecuted *or* subjected to any penalty or forfeiture...." Ind.Code § 22–4–17–9 (emphasis supplied).

Taking into account the assumption the legislature uses the language in a statute intentionally, *Merritt v. State,* 829 N.E.2d 472, 475 (Ind.2005), and recognizing our obligation to give effect and meaning to every word in a statute, *id.,* we decline to hold this statutory immunity is limited to criminal prosecutions. Rather, we find the statute explicitly provides immunity from "penalty or forfeiture" even if the penalty or forfeiture does not arise out of a criminal prosecution.

8. *See Art Country Squire, L.L.C. v. Inland Mortg. Corp.,* 745 N.E.2d 885, 891 (Ind.Ct. App.2001) (discussing the distinction between a contractual liquidated damages provision and a "penalty"): "where the liquidated damages are 'grossly disproportionate to the loss which may result from the breach or [are] unconscionably in excess of the loss sought to be asserted, [we] will treat the sum as a[n] [unenforceable] penalty rather than as liquidated damages.' "

9. This was the language used in Penny's original Determination of Eligibility. The ALJ's decision, which the review Board adopted, affirmed that determination but did not explicitly mention cancellation of wage credits. It did state "an individual who knowingly fails to disclose or falsifies regarding earnings and receives benefits to which they [sic] are not entitled is liable to repay those benefits as well as forfeit the entire claim due to fraud

962 ▪

## CONCLUSION

Penny was immune from any penalty or forfeiture as a result of the Department's decision to compel her testimony, and her wage credits accordingly may not be cancelled. However, the Board's order that Penny repay benefits to which she was not entitled was not a "penalty" for which the statute provides immunity. We accordingly affirm in part and reverse in part.

Affirmed in part and reversed in part.

SULLIVAN, J., concurs.

BAKER, J., concurring in result in part and dissenting in part with separate opinion.

BAKER, Judge, concurring in result in part and dissenting in part.

I concur with the result reached by the majority as to Parts 1, 2, and 3, but I believe that my colleagues have made this matter more difficult than it needs to be with respect to Part 4. Therefore, I respectfully dissent.

Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Golden Rule Ins. Co. v. McCarty,* 755 N.E.2d 1104, 1106 (Ind.Ct.App.2001). The first, and often the last, step in interpreting a statute is to examine the language of the statute. *Id.* When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id.* Moreover, statutes must be read as a whole, and statutory language must be read and interpreted in context. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 218 (Ind.Ct.App.1999). In doing so, we consider the goals of the statute and the reasons and policy underlying its enactment. *Elec. Specialties, Inc. v. Siemens Bldg. Tech., Inc.,* 837 N.E.2d 1052, 1057 (Ind.Ct.App.2005).

On its face, Indiana Code section 22–4–17–9 is clearly separated into two parts. The first sentence, by its own language, deals solely with immunity in criminal prosecutions. The second sentence, by its own language, applies a privilege to "any civil action except actions to enforce the provisions of this article." Penny's argument that she is not subject to "any penalty or forfeiture" because of her compelled testimony comes from the first sentence, which, again, deals only with criminal actions. But the action at issue is civil in nature; it is an action to enforce the provisions of the unemployment benefits article. The forfeiture of wage credits is part of the action under this article. Ind.Code § 22–4–16–1. Thus, the language prohibiting penalties and forfeitures does not apply in this case. I would therefore uphold the Board's decision to cancel Penny's wage credits whether or not this amounts to a forfeiture.

committed against the Department." (App. at 3.) The language concerning forfeiture of the

claim is presumably a reference to cancellation of wage credits.